In re. Washington. Jeremy L. Dolan. Council for Appellant Gwendolyn Washington. Renee M. Parker. Council for Appellate Realtime Resolution, Inc. Council, once you're settled, please have the appellant come forward. Introduce yourself. Tell us who you represent. Good morning, Your Honors. May it please the Court, I am Jenny Dolan of Dolan-Shawn Hanover, representing the appellant, Ms. Washington, in this matter. Council, would you pick one microphone or the other and decide that's the one you're going to talk into? I will do so. Oh, you picked the right one. Oh, boy. The left one would have said something else about you. How much time would you like to reserve for rebuttal? Your Honor, five minutes for rebuttal, please. I will tell you when that is. Please proceed. Thank you. Your Honors, in this case, the primary issue is whether the discharged debt in a prior Chapter 7 bankruptcy can be given new life in a later-filed Chapter 13 through a lien-strip motion, making the debtor liable all over again. We believe it cannot. When Ms. Washington filed her Chapter 7 case and obtained her discharge, there was no personal liability left. Appellee could not enforce that debt against Ms. Washington, had no state remedies, had no ability to go after her personally for that debt. It had one option, and that was to execute on its lien, which it did not do. There are many compelling reasons why we should reverse the lower court's decision in this case, but we really only need to look at three. Can I interrupt you for one second and just give you a framing question, maybe? Yes, Your Honor. In some people's view, it's surprising that there's such a divergency of opinion about this. One, I think there's some confusion about what it means to still have a lien, even though somebody's been through a 7. And I think that confusion is fostered a bit by some language that might be a little hard to track from some of the Supreme Court opinions about 506. But one of the ways to look at this is, okay, the personal obligation to pay the debt's gone in a 7, and yet there's still a lien, but that's just a right to enforce something. And even though all the party has is a right to enforce something, somebody makes payments. So, for example, if this were in the money, debtor would have made payments in the second case, right? I'm not sure I understand. If it were in the money? If this lien were in the money, you wouldn't have been able to value it, right? And the debtor would have made payments, presumably. Right, if the debt was secure. Right. So the question is, well, how do you get from lien to the fact that somebody's making payments and basically practically obligated to? Is there something else in that that looks like a claim? And that's what I think is, that's another way of saying what I think some of the cases say, that say, well, it just can't be the right answer, that the claim is gone. So if you can help me think that through, I'd be grateful. Sure, and I think the best way to look at it is that the claim is not gone. They have a claim in REM, which means they can enforce that claim against the property. Right. And if that's all they did, it would be one thing. But what actually would happen is somebody would make payments to avoid the enforcement, right? Well, if the debtor wanted to keep the property. Exactly. The debtor could continue to make payments. Exactly. But what I'm suggesting is what I think troubles some judges is that there's something more than a lien here. The lien is the ability to enforce a debt if it isn't paid, right? But the debt has technically gone away because there's no personal obligation to pay it. And yet, if you don't, something bad is going to happen. So there's sort of, you know, the lien means something more than I can just enforce this practically. And I think that's where some of the cases are struggling with, well, how can the claim truly be either gone or totally unenforceable? Well, and I think, not to oversimplify the issue, but we all learned in law school, you have in REM liability and jurisdiction, or you have in personam jurisdiction. Right. And I'm thoroughly with you. What I'm trying to suggest is it looks like the in REM leads to something more than in REM, which is what seems to be troubling the judges about why the claim should be totally disallowable in the second case. But in an in REM situation, if the creditor enforces the lien against the property to recover their property, foreclose on it, and try to make some money back on that lien, they're able to do so, and that could be a third party who's paying that money, not the debtor. But my point is to avoid that, somebody pays the claim. Right? If they enforce that lien, which here they chose not to enforce that lien. Well, no, before they enforce it. If you want to keep them from enforcing the lien, you pay the claim. The debtor could pay the claim. Right. So the problem is, what I'm suggesting is there's just something else there that people are struggling. What is that thing? And if it isn't a claim, what is it? Well, I think at the point when we are looking at whether or not they have a claim, we are looking in the bankruptcy as to whether or not there's something to pay. So they get a claim for their in REM rights in the bankruptcy. That does not mean that that is an allowable, payable, unsecured claim once there's a motion to avoid the lien. Okay. And I think that's where it turns, is the debtor. And it doesn't happen in all cases. That's Rosa, right? Pardon me? That's Rosa, no allowable claim. Yeah. And when you look at this situation, not all cases have a debtor who discharged the debt in a prior Chapter 7 bankruptcy case. Correct. Sure. And I think that's where we get some confusion where people want to pay that debt and expect to be paid on that debt, and they ignore the power of the Chapter 7 discharge. I mean, it's a permanent injunction. If we can ignore the power of a Chapter 7 discharge. In bankruptcy, we deal with recourse and nonrecourse debt. Isn't that correct? That's correct. And so if there had been no Chapter 7 discharge, just simply that the debt was a debt for which there was only liability against the property but not personal liability, under 506, wouldn't that be, under the language of 506, wouldn't that be treated as an unsecured claim in the bankruptcy? If you are saying there was no prior Chapter 7 discharge? Yes. Absolutely. They'd have the right to pay. I liken that to a 522F motion. If you're doing a motion to avoid a lien in a Chapter 7 case where there's been no prior Chapter 7 discharge, that creditor gets a claim, and they get to share in any pro rata proceeds through that bankruptcy estate. But if there's been a prior Chapter 7 discharge, there's no impersonum liability there. There's nothing left that the debtor is obligated to pay. Well, 506 does say, in this instance, and is an unsecured claim. Does that language in 506 make this into an unsecured claim? It says if you evaluate under 506A and it's disallowed as a secured claim, that the balance is an unsecured claim. Sure. They get the claim, but that does not prohibit the debtor from filing an objection to that claim. If we prohibit the debtor from filing an objection to the claim and the determination of that claim under 502, then any claim could be submitted to the bankruptcy court, and we would be prohibiting a debtor from saying, hey, this claim is time barred. This creditor doesn't have any rights under this debt. There was an improper assignment of the debt. There could be many, many reasons that that claim would be disallowed. So 506 says it's an unsecured claim, but it doesn't say it's an allowed unsecured claim, correct? Exactly. And it doesn't give the debtor the debtor still has the right to challenge that claim, and I don't think we ever want to take that right away. What would you say to the argument that this is an end run around the Johnson case from the Supreme Court? I don't think it's an end run around Johnson. In Johnson, the Supreme Court ruled only that the discharge of personal liability did not mean that the lien creditor did not have a claim at all. In a 13, the creditor had a secured claim. Then it had a claim under the definition of 101.5. The creditor continued to maintain its in rem rights. Those rights were not affected. Johnson was not dispositive on the issue whether the creditor's unsecured claim could be allowed after the discharge. The bankruptcy court here misread Johnson. But isn't it the case that under your point of view, Johnson precludes the consumer debtor to lien strip in a Chapter 7, but you can accomplish the lien strip in two steps? You can do in two steps what you couldn't do in one. What's wrong with that characterization? Essentially, I don't think anything's wrong with that characterization. Well, it's accurate anyway. There's nothing wrong with it. That's a different question. Accurate. That's a better way of putting it. I think the fact that lien strip motions are allowed on wholly unsecured claims in Chapter 13 for a reason. We know Do SNP does not allow them in Chapter 7 bankruptcies. But in the Chapter 13, what do you do with the claim once the lien has been stripped? Normally, if there had not been a prior Chapter 7 discharge, they would have a claim and they would be able to share in the distribution from that Chapter 13. Well, and you have a right under 13. That's not a 506 issue by itself. You've got a right under 13 to do that. Exactly. That's the point, right? Yeah. But under 13, you also have a right to object to a creditor's claim. Yeah. Any more questions? I'll keep going. I was just going to point out the precedents in the Ninth Circuit. Specifically, this Court's ruling in In Re Free is very, very important. Two, 524 of the Bankruptcy Code stands for a powerful principle that the discharge operates to impose a permanent injunction. And I think if we ignore that, we're turning the discharge principles on their head. Three, there's simply no remedy or authority under state law for the lien holder other than an in rem action. Even if the lien holder executes on its lien under state law after the bankruptcy, any deficiency balance could not exist as a personal liability against the debtor when that Chapter 7 discharge has already been afforded to the debtor. I think those three points are extremely important. With regard to free, we know that this Court had stated it makes no sense to include the unsecured debt in the debt limit on a claim that had been discharged in the prior Chapter 7 bankruptcy. Neither the Code nor case law compels inclusion of the discharge in in personam liability in such a calculation. And I think that carries directly over into this situation. Why would we be counting discharge debt against the debt limits in a Chapter 13 case if those debts have been discharged? And that same principle carries over into this case. And we have to also look at one of the cases that N. Ray Free relied on, and that was the Rosa case. Although it was a lower court ruling, it's directly on point with this case where the court held that there was no in personam liability and that the creditor did not get a claim in the bankruptcy. You have a little more over four minutes. If you want to stop now, you have some time for rebuttal. Thank you, Your Honor. Incidentally, we never refer to the bankruptcy court as the lower court. Thank you. I appreciate the correction. Thank you. Counsel, tell us who you are and who you represent. Good morning, Your Honors. Renee Parker on behalf of Real Time Resolutions, Inc. I'm going to choose the right microphone. Would you pull the microphone up? You've got to pull the left, you know. There we go. I would like to start off first with some facts that are not disputed in this situation, in this particular appeal. First and foremost, the underlying bankruptcy is dismissed. After the debtor failed to prevail on her proof of claim motion, she stopped making payments, and I don't know if they're related, I'm not saying they are, but she stopped making payments to the Chapter 13 trustee and did not argue against dismissal by the trustee. The second fact that's not in dispute is that this is the debtor's primary residence, which does have different ramifications under lien strip law. The third and probably the most vital fact today is that the lien would only be avoided at the time, and this was the debtor's choosing, not the court's choosing, at the time that the debtor received a discharge of the debt. As we know, the bankruptcy case is dismissed. The debtors made no outward attempt to try to reopen it, and in fact used a motion and an order that both said to avoid the lien that the lien would be paid as a general unsecured creditor. These were not mandatory court forms. The Central District will allow an attorney to alter a non-mandatory form where debtors' counsel could have simply stricken the paid as an unsecured creditor. Are you suggesting that she's stopped because of that or just that it would be the better course to just enforce the form of the order? It's not enforcement of the form of the order, but it is a judicial estoppel issue under New Hampshire v. Maine, which is a Supreme Court case. If it can be shown, and the case before us, the record before us doesn't reflect one way or the other, that if real-time resolutions relied on the fact that they would be paid as a general unsecured creditor to some extent, this was a 100 percent plan that was confirmed and it was never amended. Is that what the motion said? The motion said specifically that upon avoidance that real-time resolutions would be paid as a unsecured, a general unsecured creditor. Okay, not just the order. The motion said that. The motion said that and the order said that. Both items said that. Okay. And that creates a judicial estoppel issue before we even argue the merits of in re free. Okay. The debtor presents in re free as a controlling case, and I believe that the quote says that the courts here that they consider the debt limit and to extend consideration of a debt limit without consideration of all of the other aspects in play in this particular case, that it should mean that real-time resolutions would receive no payment at all. In re free is limited to a 109E eligibility determination. In fact, the central district in 2015 recognized this and even said in a ruling that the free case is limited. It's the cases in revue hyphen rose in 2015. Well, it may be limited, but it's limited at the outset. I mean, if you win under 109E, you ain't got a case, right? But if you win under 109E, there's still the possibility that you are not able to avoid the lien once the bankruptcy is allowed to proceed. In another chapter. In that chapter, correct. In another chapter. It could proceed in a chapter seven or in a letter. Right. Okay. But it's kind of, you know, it's kind of gating, isn't it? But. I mean, it's pretty fundamental, isn't it? I mean, to say that it's, yeah, it's different, but it's somehow less fundamental than the question of whether you would avoid a lien. I believe that what is happening with use of the in re free case here is an improper extension of the. No, I get that. But I'm asking you, I mean, how far are you? How far are you extending it? If the polling of free is you don't get to go forward in the 13. I mean, how are you extending something? I mean, you can't be more fundamental than that, can you? But on the date the 13 was filed in re free treats it as a secured claim until the determination is made otherwise. Okay. That's not my question. That's okay. That's okay. Just move on. It's okay. So when we go to analysis of 506 a one going past the fact that the bankruptcy is dismissed and going past the judicial estoppel issue here. That the statute itself clearly says either you're wholly secured or you're paid as a general unsecured creditor. Congress has not amended the statute to say unless you have an in personam discharge. Congress has the ability to do that. And when a statute is not vague or ambiguous, the courts don't look past that. Well, let me give you, I'm sorry. I was going to ask which you're talking about. 506 now is 506 a one. Your Honor. What about the omission of the word allowed before unsecured claim? What do you make of that? I think that the 506 a one simply says you either have a wholly secured claim or a general unsecured claim. The allowed claim is the allowance later of a debtor to then move to object to a claim. And real time resolutions is not object or raising an issue with the fact that there is a claim objection or that one, it's not their position that one could be filed or one could never be filed once we have a lien avoidance. What the issue is, is it does tie back to the judicial estoppels. They had a realistic expectation that they would be paid as a general unsecured creditor. And that the act to then disallow their claim on that same basis or on the Chapter 7 discharge basis would be then raised. Does that answer your question? Not quite, but I'm not sure how to formulate it more differently so I can get to where I'm at. But, I mean, suppose, I'll let somebody else ask questions. Well, I mean, is it true that 506 begins from the premise that there are claims? And sometimes they're secured, sometimes they're unsecured. And the fact that sometimes they're objected to is kind of a next step that 506a is indifferent to, right? That's correct. So there's nothing in 506a that says you are stopped from objecting to a claim based on the fact there was a prior discharge, right? I mean, you're kind of having us read that into it, I think. If not, tell me why not. Okay. Well, how about I approach this from a different direction? Under Section 102 of the Code, a claim includes an impersonum claim and an in rem claim. If it does. If it does. Yeah. Well, that's helpful. Well, no, and I'm formulating thoughts. Okay. When you have an in rem claim, it is property of the estate. Yeah. And it is property of the state that the trustee is then required to pay under Henry Gorder. Right. It's not an in rem enforcement for a stripped claim or stripped lien having a prior sub and discharge to be paid by the estate. Case law and Section 541 both say that future income is property of the estate. And the future income is being paid to this in rem claim that is now characterized as a general unsecured claim. Let me ask you a question. We've got a motion to avoid a lien against the principal residence on the basis that there's no value attached to that portion of the lien. And so the motion says that the lien is going to be allowed as an unsecured, is going to be an unsecured claim. And then the debtor subsequently files an objection to that claim on the basis that a, that a, that they've previously been granted a Chapter 7 discharge and it's not an allowable claim. What's, what's wrong with that procedurally speaking? How does that implicate what you call judicial estoppel? I'm sorry. Can you rephrase that? You're, you're saying that because they filed this form motion that said that you were going to be permitted to have an unsecured claim in the bankruptcy, you relied on that. Is that right? And therefore, there is stop from, from asserting differently when they filed an objection to the claim. I think that this was better addressed by this very court in Henry Eaton in a situation exactly like this. They adopted the holding of Henry Akram, which was a central district case. And an abbreviated quote is, we disagree that the unsecured, unsecured claim had already been discharged in the prior Chapter 7 case. And did allow, avoided Chapter 13 lien to be paid as a general unsecured creditor, despite the fact that there had been a prior discharge of the in personam liability on the note. Which the note and the deed of trust together creates security interest. Well, you were arguing that the use of the form that's used by the central district precludes the debtor from objecting to the claim later. Is that correct? I'm not saying that the form itself precludes this claim objection. What I am saying is that the debtors, the debtor and the debtor's attorney did nothing to alter the form when the form could have been altered to say otherwise, to say subject to a claim objection or we have no intent to pay anything on this. And real-time resolutions would have had the right to rely on the fact that they would be paid as a general unsecured claim. Well, let me get to the reliance question. Was there any question but that the motion to value was factually correct? There was no value attaching to the lien? That I don't know. I don't have the answer from the perspective of real-time resolutions. Nobody appealed that part, right? Nobody. And nobody contested that. That is correct, Your Honor. Okay. So the result of that, I mean, the first result of that is you ain't got a secured claim, right? That's correct. So where's the reliance in whether you had an unsecured claim or didn't have an unsecured claim? Because they just don't follow in my view. The reliance would be payment of the claim as an unsecured general claim. And what did the plan say was going to happen to the unsecureds? Payment in full? One hundred percent. Okay. But that, in your mind, that stops a later objection or something else? I believe that it stops. The reason why it stops is because now the debtor is taking a position that is wholly inconsistent with statements said on the court record, meaning we will pay you as a general unsecured creditor. Well, let's get our law correct. Judicial estoppel does not require reliance. It just requires that it be adopted by the court and that the court proceed on that procedure. Other kinds of estoppel would be based on reliance. So your argument here really is that this is a position that they presented to the court, that this was going to be an allowed claim in the bankruptcy, and the court adopted that when they signed the order avoiding the lien. Is that your position? That is our position. So reliance becomes irrelevant. Okay. Okay. I just wanted to make sure I got that on my basis. And in your mind, that basically precludes them from later objecting to the claim? I believe it does preclude them from objecting on the basis of now that this is a general unsecured claim, we don't have to pay it at all, not the fact that there was a claimant. They could have objected. Well, there was something very particular to this unsecured claim, and it was basically a prior bankruptcy case had had an effect, right? And the effect was to discharge a personal obligation on a claim. I mean, it's almost as if if we don't give ourselves full faith and credit, who will? I mean, something had to have occurred in the prior case, and it happened. So, I mean, the problem I have with this is trying to get around the effect of that prior case. I think that the issue with getting around the prior case is that we are now retroactively applying a complete lien avoidance to a Chapter 7 discharge when it wouldn't have been available in the Chapter 7 absence. Well, that's the argument that, quote, this just ain't right, close quote. It's not the argument that that law doesn't provide that, because the law clearly provides for the discharge of the impersonal liability. It does. So the cases that disagree seem to say one of two things. A, quote, that just ain't right, close quote, or B, there's something else in the Johnson analysis that suggests that there's something else in the surviving secured claim that didn't go away somehow per the discharge. Well, and that was even reiterated in the Bank of America versus Colquitt case, where they addressed the fact that we're not going to take due snip, we're not going to extend it in general retroactively and make it a lien avoidance stemming from a Chapter 7 case. And that's effectively what's happening here because the debtor says, I got a Chapter 7 discharge now, I don't have to pay you at all. Instead of this lien, the in rem portion of the lien went through the bankruptcy, the Chapter 7 discharge completely intact. I don't think I've convinced you. Well, we'll see. We'll see. And I believe that's all that we have to argue today. Thank you, Counsel. Thank you very much. You have four minutes and eight seconds. Thank you, Your Honors. That should be sufficient. One of the things I wanted to address, that was brought up by opposing counsel, is RTM didn't rely on anything. It didn't show up and oppose the motion to avoid the lien. It didn't show up and oppose the claim objection. And I think any arguments that it has here today have been waived, but obviously the court will determine that. There was a hint that this is moot because the case has been dismissed. Do you want to address that? I was just going to address that. The opposing counsel filed a motion to dismiss this case, which we opposed, because even if this case was dismissed, this issue is still important for issue preclusion purposes in a future case. If the court had left its ruling that this claim was an allowed claim, that would bar the debtor in the future from objecting to that claim. So the motion to dismiss was denied, and we were able to proceed on that respect. Another issue I had wanted to bring to the court's attention was, the form doesn't contemplate a prior discharge. It's just a form for the central district. Well, I also was kind of curious, and I noticed that in the central district, different judges have different opinions on this subject, so it seemed to me that the form can't be resolving the issue. I don't know that any resolution of fixing the form has made it through all the channels. I know that the central district has 181 pages of local bankruptcy rules and a significant number of forms, and that can create some confusion. They don't always fit every round hole. It's a square peg trying to be put in a round hole. Would you agree with counsel that this is a form you could modify and the court wouldn't necessarily reject it? I'm not sure that I agree with that. I've filed thousands of cases, and the court orders often tend to differ when you get them back, even though they've been submitted. Again, not sure that we care as much about reliance as maybe we would. Did the motion, in fact, say that when this lien is avoided, thou shalt have an unsecured claim? Did it say that? Allowed unsecured claim. Allowed unsecured claim? Not allowed. Okay, it said unsecured claim. Okay, the result of this is you have an unsecured claim. Right, and the interesting thing about the form is that the form language in the footnote seems to track 502, the language of 502, which would mean you should still have the ability to, after this motion, go object to a claim that you think is inappropriate. I mean, you could object for many reasons. Maybe the creditor's accounting was off, and you needed to object. But like the order, the motion was a form? Yes. And you could modify it, but you wouldn't be sure if the judge would have a problem with your modification. Okay. Right. And I think the last point that I have is that Congress has not limited the ability to object to a claim. It has prescribed the ability to object to a claim, and I think that's important here because the appellee is arguing that we have an in-rem claim no matter what. And if Congress wanted to change that, it could change that. But it already gave us a mechanism in 502 to address any issues that we do have with claims. And here, like we said, we believe the debtor's personal liability was discharged in the Chapter 7. The creditor had an in-rem claim. That lien was avoided in the Chapter 13 properly, and then the claim was objected to properly. It had no value. I think I'm done unless you have questions. Thank you, Counsel. The matter is submitted. We'll issue an opinion. Thank you. Have a good day. Nice job, both of you. Thank you.
judges: Kurtz, Faris, Lafferty